UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY W. LACKEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Case No. 4:20-CV-00087 SEP |
| ANDREW M. SAUL, | ) | |
| Commissioner of Social Security | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Defendant Andrew M. Saul, Commissioner for Operations, Social Security Administration (the Commissioner) denying the application of Plaintiff Anthony W. Lackey for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the Act). Because the decision denying benefits was not supported by substantial evidence, the Court will reverse the Commissioner's denial of Plaintiff's application and remand the case for further proceedings.

I.     PROCEDURAL BACKGROUND

On September 11, 2017, Plaintiff applied for DIB and SSI, alleging that he had been unable to work since June 14, 2014. (Tr. 188-201). His application was initially denied. (Tr. 120). On November 28, 2017, Plaintiff filed a Request for Hearing by Administrative Law Judge (ALJ). (Tr. 128-29). On March 14, 2019, the ALJ held a hearing. (Tr. 68-95). On July 26, 2019, the ALJ issued an unfavorable decision, finding Plaintiff not disabled. (Tr. 15-25). Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's (SSA) Appeals Council, and on December 13, 2019, the Appeals Council denied the request for review. (Tr. 1-6). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

## II.   FACTUAL BACKGROUND

Plaintiff was born on November 25, 1990.  (Tr. 305).  Plaintiff testified at the hearing before the ALJ as follows.  Plaintiff lives with his wife and their four children.  His wife works outside the home in addition to doing the childcare, cooking, shopping, and household chores. (Tr. 78-80).  When asked, Plaintiff could not remember what his wife did for employment.  (Tr. 78).  When his wife is at work, Plaintiff's mother comes over to help with the children and household.  (Tr. 82).  Plaintiff does not help with the chores because it hurts his back, and because he has trouble paying attention and remembering how to do things safely or correctly. (Tr. 78-80).  For example, the last time he tried to cook he started a fire in their kitchen.  (Tr. 79). He "can't read and write, or do math," and is "not good with money."  (Tr. 81).  He does not drive and does not have a driver's license because he was not able to pass the written portion of the test.  (Tr. 83).  Plaintiff testified that his wife has to remind him to shower and that she helps him when he does bathe.  (Tr. 87).

In his Function Report, Plaintiff reported that he needs reminders to take showers, change his clothes, and take his medicine.  (Tr. 248).  His hobbies are watching television, playing video games, and fishing or hunting, but he indicated that he does not do those things "very well."  (Tr. 250).  He reported problems with understanding, following instructions, and completing tasks. (Tr. 251).  He reported that he could not follow written instructions due to his difficulties with reading, and he cannot follow spoken instructions because he quickly forgets what he was told to do.  (Tr. 251).  He also reported that he cannot handle the paperwork involved in paying bills, and that he has a hard time handling money and has to count it "at least 3 times" when he tries to count change.  (Tr. 249).

Plaintiff completed the eighth grade.  (Tr. 891).  Plaintiff's "family history is significant for mental retardation and learning disabilities."  (TR. 362).  Plaintiff was placed in the special education program while he attended school, and he had an Individualized Education Plan to accommodate his learning disabilities.  (Tr. 322-40).  Plaintiff was administered the Wechsler Adult Intelligence Scale IV (WAIS-IV) test, and his full scale IQ score was recorded as 68 in 2016, which is in the "Extremely Low" range of intelligence, and is in the 2nd percentile.  (Tr. 880).  In 2019, Plaintiff was again administered the WAIS-IV, and his full scale IQ score was recorded as 59, which is also characterized as "Extremely Low."  (Tr. 895).

2

As to additional evidence, including testimony, work history, and medical records, the Court accepts the facts as provided by the parties in their respective statements of fact and responses.  The Court will address specific facts related to the issues raised by Plaintiff as needed in the discussion below.

## III.   STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled.  *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992).  The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010).  The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."  42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process.  20 C.F.R. §§ 404.1520(a), 416.920(a);[1] *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process).  At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled.  20 C.F.R. §§404.1520(a)(4)(i), 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611.  At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c); *McCoy*, 648 F.3d at 611.  At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404,

_____

[1] All references throughout this opinion are to the version of the regulations that was in effect as of the date of the ALJ's decision.

3

Subpart P, Appendix 1 (the "Listings").  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611.  The Listings describe impairments the SSA considers "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."  20 C.F.R. § 404.1525(a).  If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process.  20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" (RFC), which is "the most a claimant can do despite [his or her] limitations."  *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. §§ 404.1520(e), 416.920(e), 416.945(a)(1).  At Step Four, the Commissioner determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611.  If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step.  *Id.*  At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523.  At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform.  *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).

## IV.   THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 14, 2014, the alleged onset date; that Plaintiff had the severe impairments of mild intellectual disability, mild depressive disorder, and polycythemia; and that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  (Tr. 18).  The ALJ found that Plaintiff had the RFC to perform medium work as

4

defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), except that he must never climb ladders, ropes, or scaffolds and should avoid all exposure to unprotected heights; he is limited to third-grade-level reading and math, including making change; he is limited to no direct interaction with the public, only casual and infrequent interaction with co-workers, and occasional interaction with supervisors; he is limited to low stress jobs, with only occasional decision making and occasional changes in the work setting; and finally, he cannot perform tandem tasks (such as production line work) and is restricted to end of workday measurements.  (Tr. 20).

At Step Four, the ALJ made no finding, as the evidence before her did not clearly show whether Plaintiff had any past relevant work.  (Tr. 23).  At Step Five, relying on the testimony of a vocational expert ("VE"), the ALJ found Plaintiff capable of performing other jobs existing in significant numbers in the national economy, including silver wrapper (*Dictionary of Occupational Titles* No. 318.687-018), marker (*Dictionary of Occupational Titles* No. 209.587-034), and cleaner/housekeeper (*Dictionary of Occupational Titles* No. 323.687-014).  (Tr. 24).  Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act.

## V.    DISCUSSION

Plaintiff argues that this case should be reversed and remanded due to errors in the ALJ's analysis at Step Three of whether Plaintiff met or equaled Listing 12.05(B).  He further argues that the ALJ failed to include a pace limitation in the RFC finding and did not include all applicable limitations in the hypothetical questions posed to the vocational expert (VE) at the hearing.

### A.  Standard for Judicial Review

The decision of the Commissioner must be affirmed if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole.  *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).  "Substantial evidence 'is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion.'"  *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012) (quoting *Moore*, 572 F.3d at 522).  In determining whether substantial evidence supports the Commissioner's decision, the Court considers both evidence that supports that decision and evidence that detracts from it.  *Id.*  However, the Court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of

5

testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

### B.  The ALJ's Step Three Analysis

Plaintiff argues that this case must be reversed and remanded because the ALJ erred in her analysis at Step Three of whether Plaintiff met or equaled Listing 12.05(B), which pertains to intellectual disability.  Specifically, Plaintiff argues that the ALJ erred by inadequately explaining the basis or import of her finding that Listing 12.05(B) was "not met because the record indicates that the claimant functioned at a higher level prior to his attainment of age 22 . . . [and his] IQ scores have declined without impairment-based explanation."  Plaintiff additionally argues that the ALJ erred by focusing too much on Plaintiff's strengths in adaptive functioning, rather than his adaptive deficits.

The Listing of Impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (the "Listings") "describes for each of the major body systems impairments that [the Commissioner] considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §§ 404.1525(a), 416.925(a).  "The claimant has the burden of proving that his impairment meets or equals a listing." *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010).  "To meet a listing, an impairment must meet all of the listing's specified criteria." *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004).

At the time of the ALJ's decision, Listing 12.05(B) read as follows:

1.  Significantly subaverage general intellectual functioning evidenced by (a) or (b):

    a.     A full scale (or comparable) IQ score of 70 or below on an individually administered test of general intelligence; or

    b.     A full scale (or comparable) IQ score of 70-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and or below on an individually administered test of general intelligence; and

6

2.  Significant deficits in adaptive functioning currently manifested by an extreme limitation of one, or marked limitation of two, in the following areas of mental functioning:

      a.      Understand, remember, or apply information; or
      b.      Interact with others; or
      c.      Concentrate, persist, or maintain pace; or
      d.      Adapt or manage oneself; and

3.  The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.05(B).

The ALJ found that Plaintiff's impairments did not meet or equal in severity any of the listed impairments.  (Tr. 22-23, 25).  She stated that "these requirements are not met *because* the record indicates that the claimant functioned at a higher level prior to his attainment of age 22. In particular, the record shows that the claimant's IQ scores have declined without impairment-based explanations."  (Tr. 19) (emphasis added).

Plaintiff argues that the ALJ did not adequately explain the import of her finding that Plaintiff functioned at a higher level prior to the age of 22.  The Court agrees.  Thought it is unclear, the ALJ's wording suggests that she may have determined that Plaintiff did not meet the requirements of Listing 12.05 because he did not show an intellectual disability that arose before age 22.  To make matters even less clear, the ALJ, in support of this finding, cites to Plaintiff's full scale IQ scores of 68 in 2016 and 59 in 2019, even though Plaintiff was older than 22 at the time of both tests.  (Tr. 19, 880, 895).  Additionally, the ALJ made no express findings regarding whether Plaintiff had manifested deficits in adaptive functioning prior to age 22.  Furthermore, the ALJ's language implies that she may have believed that Plaintiff could not meet Listing 12.05 because he did not function at an equal or lower level prior to age 22.  If so, such finding would constitute legal error.  The listing requires only that the disorder "began" prior to that age, not that it was of equal severity prior to claimant reaching the age of 22.  20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.05(B).  That Plaintiff may have functioned at a higher level before age 22 is legally insignificant so long as his disorder was present at that time.  *Id*.

The Court recognizes that this lack of clarity in the ALJ's analysis, standing alone, does not necessarily require remand.  The Eighth Circuit has "consistently held that a deficiency in

opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case." *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999). However, remand is warranted "where the ALJ's factual findings, considered in light of the record as a whole, are insufficient to permit this Court to conclude that substantial evidence supports the Commissioner's decision." *Scott v. Astrue*, 529 F.3d 818, 822-23 (8th Cir. 2008). *See also Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005) (remanding for further consideration and findings with regard to Listing 12.05 where, after review of the record, the court could not conclude that the ALJ's decision was supported by substantial evidence on the record as a whole); *Pettit v. Apfel*, 218 F.3d 901, 903-04 (8th Cir. 2000) (remanding for further consideration "because the ALJ's factual findings are insufficient for [the court's] review").

Defendant argues that substantial evidence does support the denial of benefits, and that Plaintiff may not ask the Court to reweigh that evidence. The Court acknowledges that "[i]t is not the role of this court to reweigh the evidence presented to the ALJ." *Hensley v. Colvin*, 829 F.3d 926, 934 (8th Cir. 2016). But that is not what Plaintiff seeks—rather, Plaintiff argues, and the Court agrees, that the ALJ seemed not to consider or make findings based upon evidence of Plaintiff's adaptive deficits, as required by Listing 12.05. In light of that, and as further discussed below, the Court finds that the ALJ's findings, viewed in light of the record as a whole, are insufficient to permit the Court to conclude that substantial evidence supports the Commissioner's decision that Plaintiff does not meet or equal Listing 12.05(B).

First, ample evidence in the record supports a conclusion that Plaintiff suffered from an intellectual disorder prior to the age of 22. His functioning was significantly impaired as a child, as indicated by his special education records describing him as needing special education services all day throughout much, if not all, of his formal education. (Tr. 325-326). His school records show that there were only approximately 100 out of 1,125 minutes per school week when Plaintiff did not receive special attention in a self-contained setting. *Id*.

On February 3, 1998, when he was seven, Plaintiff was administered the Wechsler Intelligence Scale for Children-III (WISC-III). (Tr. 364). He had a Performance IQ of 65 and a full scale score of 71. (Tr. 364). The results report noted that "[t]he chances that the range of scores between 67 and 78 includes his true IQ is about 95 out of 100. His score places him in the 3d percentile." (Tr. 365). That same year, he was administered the Behavior Evaluation Scale-2

8

(BES-2) and received a score of 2 on Learning Problems, which indicates "very serious concern," and represents a child who will not succeed "without special attention or assistance." (Tr. 370).  According to the St. Clair School District Diagnostic Statement of Handicapping Condition, dated February 17, 1998, Plaintiff was determined to be learning disabled in basic reading skills and math applications.  (Tr. 377).  That Statement further states that his deficits "adversely affect" his functioning, and that his difficulties are "felt to be significant," and "are not deemed to be temporary in nature."  (Tr. 377).  That evidence plainly supports a conclusion that Plaintiff had an intellectual disorder that arose prior to age 22.

Furthermore, the ALJ inappropriately focused on Plaintiff's adaptive strengths, while seeming to disregard much of the record evidence indicating deficits in adaptive functioning.[2] The ALJ, in determining that Plaintiff was only moderately limited in the four sets of criteria identified in Listing 12.05, discussed at length what Plaintiff *could* do, including caring for his children, taking out the trash, doing the laundry, making meals, playing video games, counting change, getting along with other people, and tending to his own personal care and grooming. (Tr. 19).  However, she did not acknowledge and analyze the contrary evidence that Plaintiff struggled with, or indeed, could *not* perform, many of the cited activities.  Such failure to adequately identify and analyze a claimant's adaptive deficits is reversible error.  *See Jack v. Berryhill*, 2017 WL 3493800, *5 (E.D. Mo. August 15, 2017) (reversed and remanded to the Commissioner because "[t]he ALJ failed to analyze the claimant's *deficits* in adaptive functioning," while focusing on her adaptive strengths) (emphasis in original).

For example, while describing Plaintiff's capacity to understand and remember, the ALJ cited his ability to "make meals" (Tr. 19), yet Plaintiff testified and noted in his function report that he did not prepare meals, and that when he recently attempted to cook he started a kitchen

---

[2]  The Eighth Circuit has found several factors relevant to an analysis of deficits in adaptive functioning, including whether a claimant was able to complete high school; whether a claimant has difficulties in reading and writing; whether a claimant needed special education services; whether a claimant has exhibited behavioral problems; whether a claimant has been able to perform work (especially skilled or semi-skilled work); and whether a claimant has been able to perform activities of daily living independently.  *See, e.g.*, *Scott v. Berryhill*, 855 F.3d 853, 856-57 (8th Cir. 2017) (discussing special education classes, failure to complete high school, history of unskilled and semi-skilled work, reading ability, communication ability, and ability to perform daily activities); *Maresh v. Barnhart*, 438 F.3d 897, 900 (8th Cir. 2006) (discussing frequent fights with other children, struggling in special education classes, and dropping out of school in the ninth grade); *Lott v. Colvin*, 772 F.3d 546, 550 (8th Cir. 2014) (discussing special education classes, failure to complete high school, and violent altercations).

fire due to inattentiveness (Tr. 79, 248).  Similarly, the ALJ stated that Plaintiff was "able to count change" (Tr. 19), while Plaintiff indicated that he had "a hard time counting out money when I need to" and had "to count at least 3 times" (Tr. 249); that he cannot "do math"; and that he is "not good with money" (Tr. 81).

As for Plaintiff's abilities with respect to self-management, the ALJ again seemed to ignore evidence in the record of adaptive deficits.  She stated that a consultative examiner had described him as "nicely dressed and adequately groomed," and that "he had no problem tending to his own personal care such as bathing and dressing."  (Tr. 19).  However, that same consultative examiner had, on another occasion, described Plaintiff as being "poorly groomed" and having an "overall disheveled appearance" with "inadequate" clothing.  (Tr. 879).  Additionally, Plaintiff testified that his wife has to remind him to shower and that she helps him when he does bathe (Tr. 87), and Plaintiff stated in his function report that he needs reminders to change his clothes and take his medicine (Tr. 248).

Similarly, when describing Plaintiff's social skills, the ALJ noted that he "had no problems getting along" with others, and that consultative examiners and physicians described him as "pleasant" and "socially confident."  (Tr. 19).  However, Plaintiff reported that he yells at people (Tr. 251), gets mad very easily (Tr. 252), and generally has a hard time getting along with others (Tr. 253).  Additionally, his school records are replete with descriptions of Plaintiff's behavioral difficulties.  For example, he was suspended from school in 2002 for punching a student.  (Tr. 313).  In 2003, Plaintiff was forced to attend homebound instruction at the police station due to "aggressive behavior," including "berating, pushing, and threatening his peers." (Tr. 326).  He was suspended in 2004 for threatening a teacher, at which time the school noted that Plaintiff's behavior was "very out of control," and that "this type of behavior ha[d] been escalating as of late."  (Tr. 307).  These are but a few examples of many similar behavioral and social problems exhibited by Plaintiff that are indicative of deficits in adaptive functioning throughout his childhood.  (Tr. 297-378).  *See Maresh v. Barnhart*, 438 F.3d 897, 900 (8th Cir. 2006) (considering "frequent fights with other children" to be evidence of "deficits in adaptive functioning").

The Eighth Circuit has cautioned against over-reliance on the ability to perform basic activities of daily living, such as preparing food, taking out trash, or showering, in finding that a plaintiff has not met Listing 12.05.  Adopting the argument of a plaintiff that the ALJ had

10

improperly relied on that plaintiff's account of his functioning to find Listing 12.05 not satisfied, the Eighth Circuit stated:

> The ALJ's reasoning, if accepted, would make it practically impossible for noninstitutionalized mentally-retarded claimants to meet [the Listing] because ALJs will nearly always be able to point to the performance of rudimentary activities of daily living—even though such activities do not, in fact, show that a person is not mentally retarded.

*Lott v. Colvin*, 772 F.3d 546, 551 (8th Cir. 2014).  The SSA has also indicated that "common everyday activities" such as "preparing simple meals" or "caring for your personal needs" ought not to be the focus of the ALJ's analysis.  *See* 20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.05(H)(3)(d).  Plaintiff's ability to perform rudimentary daily activities must be weighed against all of the other evidence relevant to deficits in adaptive functioning.  The Court cannot discern whether the ALJ properly weighed that evidence in this case.

In sum, the record contains conflicting evidence regarding whether Plaintiff had deficits in adaptive functioning sufficient to satisfy the requirements of Listing 12.05(B), and the ALJ neglected to properly weigh the sufficiency of Plaintiff's adaptive deficits.  Between that and the ambiguity of the ALJ's reasons for finding the Listing not satisfied, the Court is unable to determine that substantial evidence supports the ALJ's finding that Listing 12.05(B) is not met.  Accordingly, the Court will remand the case to the Commissioner for further consideration of Listing 12.05.  The Court need not reach Plaintiff's additional allegations of error by the ALJ.

## VI. CONCLUSION

For the reasons set forth above, the Court finds that the decision of the Commissioner is not supported by substantial evidence.  Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **REVERSED** and that this case is **REMANDED** under 42 U.S.C. § 1383(c)(3) and Sentence Four of 42 U.S.C. § 405(g) for reconsideration and further proceedings consistent with this opinion.


Dated this 23rd day of March, 2021.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE